# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARRY HUGHES, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-14-150-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Proceeding pro se, the claimant Larry Hughes requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 29, 1968, and was forty-five years old at the time of the administrative hearing (Tr. 42, 178). He has a high school education and past relevant work as a carpenter, rough carpenter, and industrial cleaner (Tr. 31, 219). The claimant alleges that he has been unable to work since October 25, 2011 because of osteoarthritis, lower back condition, ADHD, PTSD, and depression (Tr. 218).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on August 23, 2012. His application was denied. ALJ Virginia M. Robinson conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated November 18, 2013 (Tr. 11-33). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner on appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work, as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk about six hours in an eight-hour workday, and sit six hours in an eight-hour workday, with normal breaks in

jobs that have some duties that can be performed while seated and some that require either walking or standing so that he will be able to change positions during the day as part of performing the job without being off task for more than 10% of the work period. Additionally, she found that he could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds; and must avoid concentrated exposure to extreme cold, excessive vibration, and workplace hazards, such as dangerous machinery and unprotected heights (Tr. 18). She further limited the claimant to work that requires him to perform relatively simple routine tasks and have superficial contact with the public (Tr. 18). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled because there was work that he could perform, *i. e.*, plumbing hardware assembler, assembler small products, and table worker (Tr. 32).

## Review

Construing the pro se claimant's arguments liberally,[2] the claimant contends that the ALJ erred: (i) by failing to properly account for his physical impairments when formulating his RFC, specifically with regard to his cervical spondylosis with myelopathy and opinions by several treating physicians; and (ii) by failing to properly analyze his credibility. The undersigned Magistrate Judge finds the claimant's

---

[2] *See, e. g., United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("[B]ecause [he] appears pro se, we must construe his arguments liberally; this rule of liberal construction stops, however, at the point at which we begin to serve as his advocate.").

contentions unpersuasive, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of degenerative disk disease with myeloradiculopathy, osteoarthritis, affective disorder, anxiety disorders, and alcohol addiction disorder, along with the nonsevere impairments of acute bronchitis, hypertension, and obesity (Tr. 13-15). The medical evidence with regard to the claimant's physical impairments reflects that the claimant was treated in 2011 for bilateral foot pain, and prescribed orthotics after his assessment of early midfoot osteoarthritis secondary to flexible pes planus Tinea pedis (Tr. 345).

In July 2012, the claimant was prescribed physical therapy for six weeks, to treat left hip and back pain, and left lumbar radiculopathy (Tr. 355). On August 2, 2012, Dr. Laughlin completed a Documentation Request for Medical or Disability Condition in response to a request, and indicated that the claimant's impairments of osteoarthritis bilaterally in his feet, left lumbar radiculopathy, ADHD, PTSD, depression and anxiety required accommodations or considerations in that the claimant had, as related to his physical impairments, a sitting limitation to one hour at a time without pain, and standing or walking limited by pain after one hour (Tr. 362). She indicated that the claimant could perform light work, defined as the ability to lift twenty pounds maximum and frequently lift or carry up to ten pounds, may require walking or standing up to six out of eight hours, or involving sitting most of the time with occasional pushing and pulling arm and leg controls, that this was likely to last three to six months, and that physical therapy was

prescribed to address his lumbar radiculopathy (Tr. 363). On September 6, 2012, Dr. Laughlin noted that the claimant's reported primary reason for applying for disability was psychiatric, and she recommended that evaluation would be more appropriate with a psychiatrist (Tr. 385).

Dr. Laughlin referred the claimant to Dr. Tracy Oullette, who evaluated the claimant on March 4, 2013 for rehabilitative recommendations (Tr. 525). Dr. Oullette assessed the claimant with some degenerative osteoarthritis in the low back, left knee, and bilateral feet, and recommended conservative strategies to return him to a higher level of activity and fitness (Tr. 527-528). On March 6, 2013, Dr. James R. Beieler, D.O., completed an Attending Physician's Statement of Disability, indicating with a check mark that the claimant was "totally disabled (meaning incapable of performing any and every duty pertinent to his or her occupation as a carpenter, and not engaged in any other occupation for wage or profit)" and listing the claimant's diagnoses as: chronic left knee pain, history of ACL repair, degenerative arthritis; chronic low back pain, degenerative disc disease; chronic foot/ankle pain, degenerative spurring (Tr. 496). He further stated that the claimant's "pain does not allow him to sit or stand for prolonged periods; walking, stooping, bending repetitively also cause increased pain" (Tr. 497).

The claimant's treating physician, Dr. Laughlin, referred the claimant to Dr. Michael Lawrence, who performed studies, diagnosed cervical spondylosis with myelopathy, and prescribed surgery, which the claimant underwent in May 2013 for an anterior cervical discectomy and fusion at C5-6 and C6-7. At his one-month follow up,

the claimant had some discomfort in his neck and pain in left hand and left hip, but strength had improved (Tr. 499-515). Dr. Lawrence also noted the claimant had been assessed with obstructive sleep apnea in the hospital and sent home with a CPAP machine, and reported no issues with that (Tr. 499). On November 25, 2013, Dr. Beieler wrote a letter stating that it was his medical opinion that the claimant would "take about a year [to] have full recovery of his nerves after his neck surgery 5/21/13[.]" (Tr. 647).

The claimant testified at the administrative hearing that he received unemployment benefits through June 2012, and that during that time he was on the "out-of-work" list at the local union, meaning that he was waiting to go to work (Tr. 50-51). He further testified that he worked for "six months solid" in 2009, 16 days in 2010, and 12 days in 2011, which were all the calls he was dispatched to, and he did not go look for other work because he wanted to be available to do carpentry work (Tr. 51). He stated that he had been in a car accident in the early 1990s, and that he fell about seventeen feet off a ladder in 2008, which is when he began noticing his pain (Tr. 56-58). He testified that he believed his recovery from neck surgery would take six to nine months, but that he was still in pain in his shoulder, between his shoulder blades, on his neck, and on his left side (Tr. 68).

In her written opinion, the ALJ extensively summarized the claimant's hearing testimony, as well as the medical evidence contained in the record. As relevant to this appeal, she noted the claimant's May 2013 diagnosis of cervical spondylosis with myelopathy, and that the claimant had undergone an anterior cervical microdiscectomy

with bilateral foraminotomies, an interbody fusion, and anterior plating from C5-C7, referencing Dr. Lawrence's records (Tr. 19). She later noted that the claimant's surgery was generally successful, in that he could grip bilaterally and move all extremities, and that one month later he reported walking up stairs and riding a bicycle (Tr. 24). As to the claimant's physical impairments, the ALJ gave significant weight to Dr. Oullette's opinion that the claimant would benefit from a job where he could change positions; gave "some weight" to Dr. Laughlin's opinion that the claimant could stand/walk/sit for an hour in light of the opinion that the claimant was limited to light exertional work, and gave "significant weight" to the limitation to light exertional work; gave "little weight" to Dr. Beieler's opinion, noting his physical exam findings related to squatting and range of motion, but that he had not placed the claimant on any physical restrictions, and that his finding of total disability was based on pain, which is not a diagnosis (Tr. 27-28). She further gave little weight to Dr. Lemay's 2012 opinion that the claimant was limited to sedentary work because his opinion was conclusory and in contrast to the other findings in the record and the claimant's own reported activity level (Tr. 28-29). The ALJ also determined that the claimant was not completely credible, listing the relevant factors to consider, then citing, *inter alia*: (i) the claimant's activities, which included shipping, driving, setting up a garage sale for his mother-in-law, attending community college, and working on vocational development; (ii) that he went to community college in order to receive TANF funds, and only discontinued doing so due to situational stressors rather than his physical impairments; (iii) he reported doing volunteer work in the community

after withdrawing from community college; (iv) he worked full time for several different periods in 2010 and 2011, and he testified he did not get another job in 2010 or 2011 because he was waiting for the union to call him about jobs; (v) he received unemployment benefits after the alleged onset date; (vi) objective findings, including specific x-rays and physical exams, did not support the alleged limitations; (vii) the claimant appeared to over report his limitations to obtain benefits and provided inconsistent information; and (viii) he was not entirely compliant with his treatment plans.

The claimant now asserts on appeal that the ALJ ignored his diagnosis of cervical spondylosis with myelopathy and further erred by failing to properly consider the opinions of Dr. Beieler, Dr. Lawrence, and the records from St. Joseph's hospital. As an initial note, the undersigned Magistrate Judge notes that the ALJ *did* discuss this diagnosis, as well as the claimant's surgical treatment and his follow-up assessments (Tr. 19-29), and furthermore considered this impairment when formulating his RFC. Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating

physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "[s]he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed each of the opinions contained in the records. Her findings, discussed above, indicate that she considered each of these opinions in turn and gave reasons for adopting or not adopting the limitations described in each of the opinions. Accordingly, she did not commit error in failing to include further limitations for the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514

Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment."). Additionally, the ALJ was not bound by Dr. Beieler's statement that the claimant was totally disabled, and she properly considered his opinion and provided reasons for failing to find it persuasive. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca, v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993).[3]

The claimant next argues that the ALJ erred by failing to properly assess his credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite

---

[3] The undersigned Magistrate Judge also notes that Dr. Beieler's opinion was that the claimant was completely disabled from performing *carpentry*, not all work, and although the ALJ did not rely on this as a basis for giving the opinion little weight, it is worth noting that the ALJ agreed at step four when she found the claimant could not return to his past relevant work as a carpenter (Tr. 31, 496).

the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

In this case, the ALJ summarized the claimant's testimony and determined that his "statements concerning the intensity, persistence, and limiting effects of his symptoms [were] not entirely credible for the reasons explained in this decision" (Tr. 20). She then went on to discuss numerous reasons for disbelieving the full extent of the claimant's allegations of disabling limitations, as specified above. Thus, the ALJ linked her credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with *Hardman*. Her credibility determination was therefore not clearly erroneous. Accordingly, the decision of the Commissioner should be AFFIRMED.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**